**Tom N. COPE, Appellant,**

v.

**L. V. HENDERSON et al. Appellees.**

**No. 7997.**

Court of Civil Appeals of Texas, Texarkana.

July 28, 1970.

Rehearing Denied Aug. 11, 1970.

Neal Birmingham, Linden, for appellant.

Calvin W. Wesch, Kermit, J. Ray Gayle, Hitt & Gayle, Texarkana, for appellees.

PER CURIAM.

Judgment was entered in the District Court of Cass County, "directing and commanding the Defendant, * * * [County Judge of Cass County, Texas], to forthwith proceed with all reasonable dispatch to certify the results of the election held on November 1, 1969, to incorporate the proposed Town of Domino, Texas, and the election of the Mayor and two (2) Commissioners thereof, and to enter an Order upon the Minutes of the Commissioner's Court of Cass County, Texas, that the inhabitants of the Town of Domino, Texas, are incorporated within the boundaries thereof and that Charles A. Richie be declared to be elected the Mayor of the Town of Domino, Texas, and that L. D. Grundy and John Mayberry be declared

to be elected Commissioners of the Town of Domino, Texas, all to serve until the first Saturday of April following, to-wit April 4, 1970, * * *." An appeal from the trial court judgment has been perfected. The judgment is affirmed.

An unincorporated town or village containing more than 200 and less than 10,000 inhabitants may become an incorporated municipality by one of the methods prescribed in Chapter 11, Title 28, Revised Civil Statutes of Texas, 1925. See Tex. Rev.Civ.Stat.Ann. art. 1133 (1963).[1] In this instance, those initiating the incorporation movement proposed, as authorized by Tex.Rev.Civ.Stat.Ann. art. 1155 (1963),[2] to incorporate the town of Domino, Texas, under a Commission form of government in conformity with the article mentioned and other articles of the statute pertaining to the Commission form class of municipalities. Compliance with all prerequisites to incorporation, including an election for that purpose and a return of the results thereof by the election judge to the County Judge of Cass County, are conceded. This litigation arose out of the refusal or failure of the County Judge of Cass County to timely canvass the vote, declare the results of the election and enter an order upon the Minutes of the Commissioner's Court in compliance with Texas Rev.Civ.Stat.Ann. arts. 1157 and 1158 (1963),[3] thereby evidencing incorporation of the Town of Domino, Texas, and delineating its boundaries, etc.

The substance of appellant's first and second points of error is that the appellees

1. Art. 1133. When a town or village contains more than two hundred (200) and less than ten thousand (10,000) inhabitants, it may be incorporated as a town or village in the manner prescribed in Chapter 11, Title 28, of the Revised Civil Statutes of Texas, 1925, and all amendments thereto.

2. Art. 1155. If any unincorporated city or town in this State, having a population of over five hundred and less than five thousand inhabitants, or any unincorporated town or village in this State having a population of more than two hundred and less than one thousand inhabitants, shall desire to be incorporated under the commission form of government as herein provided, an election to determine whether such incorporation may be had shall be called by the county judge of the county under the provisions herein governing incorporated cities and towns, and incorporated towns and villages, and notice of such election shall be given as herein provided, and if satisfactory proof is made that the city or town or village contains the requisite member of inhabitants, the county judge shall make an order for holding an election on a day therein stated, and at a place designated within the city or town or village for the purpose of submitting the question to a vote of the people.

3. Art. 1157. The mayor or county judge, as the case may be, shall appoint two judges of election, one of which shall be designated as the presiding judge, and two clerks, to hold said election. The election shall be held and governed by the general laws of this State except as herein otherwise provided, and the returns shall be made to the mayor or the county judge, as the case may be within five days after said election shall have been held. If a majority of the votes cast are 'For Commission,' then the mayor or county judge shall enter an order to that effect upon the minutes of the city council, or board of aldermen, or of the commissioners court, and after the entry of said order said incorporated city or town or village shall be under the commission form of government, and said unincorporated city or town, or unincorporated town or village, shall be incorporated and under the commission form of government.

Art. 1158. At such election there shall be elected two commissioners, who shall serve until the first Tuesday in April following, and in said unincorporated cities and towns, and unincorporated towns and villages, there shall at such elections be elected a mayor and two commissioners, who shall serve until the first Tuesday in April following. The mayor of the incorporated cities and towns, and incorporated towns and villages, adopting the commission form of government shall continue to hold his office for the term for which he was elected. The term of office of the mayor and commissioners, except the first elected under the provisions hereof, shall be two years and they shall be elected on the first Tuesday in April every two years.

were not entitled to the writ of mandamus initially quoted in part, because of the existence of another plain, effective and adequate remedy. In argument, appellant states his position in this language, to-wit:

"The issue of law under these points is whether or not Vernon's Ann.Civ.St. Election Code Art. 1.02 applies to elections under the Revised Civil Statutes of Texas, 1925, as amended; title 28, chapter 12, codified as Vernon's Ann. Civ.St. Art. 1155 et seq. in such a manner as to devolve a separate statutory duty upon the County Commissioners and thereby give the appellees another plain, effective and adequate remedy to obtain the relief sought through two (2) or more County Commissioners of Cass County, Texas; after the appellant, as County Judge, failed to perform such duty.

"If, after the appellant failed to act, the duty to act devolved upon the County Commissioners under the Election Code (supra); such duty created a plain, effective and adequate remedy by which the appellees could have obtained the relief sought. Before mandamus will issue to compel the appellant to act, appellees must exhaust their alternate remedy by presenting the returns of the election to two (2) or more of such County Commissioners, requesting that such Commissioners perform the duties devolved upon the appellant County Judge

by Vernon's Ann.Civ.St. Art. 1157, and such commissioners must then refuse.

"The appellant contends that the appellees have such alternate statutory remedy, that it is a plain, effective and adequate remedy; and that the appellees have failed to exhaust it. * * *"

■ Proper construction of the several relevant statutory provisions compels the conclusion that Election Code Art. 1.02 is not applicable in this instance. It follows that neither the County Commissioners as a body nor any of them in combination had a duty by reason of Art. 1.02 to take any action with respect to canvassing the vote, declaring the result of the election, and entering an order upon the Minutes of the Commissioner's Court with respect to the incorporation of the Town of Domino, Texas. Therefore, the Election Code article did not afford the appellees a remedy that is plain, effective and adequate. This court, in Miller v. Bostick, 411 S.W.2d 759 (Tex.Civ.App. Texarkana 1967, no writ), after considering Williams v. Glover, 259 S.W. 957 (Tex.Civ.App. Waco 1924, no writ) and Perkins v. Ingalsbe, 162 Tex. 456, 347 S.W.2d 926 (1961), decided that Tex.Rev. Civ.Stat.Ann. art. 1139 (1963)[4] placed a ministerial duty upon a county judge to accept election returns, canvass the vote, and declare the results of an incorporation election authorized by Tex.Rev.Civ.Stat. Ann. art. 1134 (1963),[5] et seq., for the

---

4. Art. 1139. If a majority of the votes are cast in favor of incorporation the officers holding the election shall make return thereof to the county judge within ten days after the same was held. The county judge shall, within twenty days after the receipt thereof make an entry upon the records of the commissioners court that the inhabitants of the town or village are incorporated within the boundaries thereof; which boundaries shall also be designated in the entry. A certified copy of such entry, together with the plat of the town or village, shall thereupon be recorded in the proper record of deeds of such county.

5. Art. 1134. If the inhabitants of such town or village desire to be so incorporated, at least twenty residents thereof, who would be qualified voters under the provisions of this chapter, shall file an application for that purpose in the office of the county judge of the county in which the town or village is situated, stating the boundaries of the proposed town or village, the name by which it is to be known when incorporated, and accompany the same with a plat of the proposed town or village including therein no territory except that which is intended to be used for strictly town purposes. If any town or village be situated

incorporation of towns under an Aldermanic form of government. Since language in Articles 1157 and 1158 pertaining to canvassing Commission form of government election returns, declaring the result and entering an incorporation order is so similar to the language in Article 1139 governing Aldermanic form election, the construction made in Miller v. Bostick is appropriate here and should be followed. That is to say, Articles 1157 and 1158 impose a duty upon the County Judge to accept election returns, canvass the vote, and declare the result, and if a majority of the votes are cast for incorporation, the judge is duty bound to enter an order effectuating incorporation, and attendant statutory organizational preclusion, upon the Minutes of the Commissioner's Court.

The instant incorporation election was held in accordance with the procedure set out in Chapter 11, Title 28. The Acts of the 1951, 52nd Leg., Chap. 492 designated the Election Code as "AN ACT to adopt and establish an election code for the State of Texas, to revise and recodify Title 50 of the Revised Civil Statutes of 1925 of Texas," etc. Election Code Art. 1.02 [6] is revised Tex.Rev.Civ.Stat.Ann. art. 2924 (1939) unchanged and before recodification was a part of Title 50. The wording of Article 2924 restricted and confined the articles' operation to duties imposed upon a County Judge by Title 50 as it formerly existed and goes no further. Recodification as Election Code Art. 1.02 did not change the articles' operation except to make it applicable to the operation of statutes gathered into the Election Code. The reach and scope of the article is specifically stated in its first few words; there it is said: "Whenever, by this title, any duty is devolved upon a county judge," etc. This specific limitation on the operation

of Art. 1.02 to *this title*, the title in which the article appears, makes it obvious that the Election Code article was not intended to be a part of or govern procedures in a municipal incorporation election authorized in an entirely different title.

■ Appellant was denied a jury trial. The record shows a jury was waived, or if consent to a nonjury trial was withdrawn, a jury was not timely requested. In an order dated November 26, 1969, the trial judge recited that: "The attention of the Court was called to the demand of the defendant for a trial by jury, which was made and filed of record on the 25th day of November, 1969. The parties having heretofore agreed on the 17th day of November, 1969, that said cause would be heard *before and by* the Court on the 26th day of November, 1969". (Emphasis added). Although the appellant's argument that he was wrongfully denied a jury trial has a strong appeal due to the haste in which the appellant was required to defend in the proceeding, no purpose would be served by a minute discussion of the circumstances. The above quoted portion of the order evidencing the agreement of the parties entered on the minutes forecloses complaint on this ground. The order recites the parties agreed to a nonjury trial in language that is customarily used by lawyers and courts to distinguish a nonjury from a jury trial. The recitation is not contradicted by the record. Consistent with the recitation is the fact that for convenience the hearing was by agreement actually moved from Cass and held in Bowie County. It may be assumed that the consent to a nonjury trial might be withdrawn under proper circumstances, yet, in this case, withdrawal from the agreement did not occur at such time as to make the demand for a jury timely under the re-

on both sides of a line dividing two counties, application may be made to the county judge of either county in which a portion of said town or village is located, in manner and form as herein provided. A new election shall not be ordered in less than one year.

6. Art. 1.02. Whenever, by this title, any duty is devolved upon a county judge, and that office is vacant, or such officer from any cause fails to perform such duty, any two (2) or more of the county commissioners of the county may and shall perform such duty.

quirements of Tex.R.Civ.P. 216. No abuse of the trial court's discretion is shown.

Appellant's fourth point of error is that the "trial court erred in ordering the appellant to show cause why mandamus should not issue". The stress of the argument under the point is that (1) the show cause order wrongly placed the burden of proof on the appellant, (2) that it so limited appellant's time to respond that he was deprived of reasonable opportunity to present a defense. These objections will be discussed in the order listed.

■ As trial began, appellant called the burden of proof contention to the attention of the court and opposing counsel. Thereupon, the statement of facts records, counsel for appellant stated, "We accept the burden of proof, Your Honor." The trial proceeded with that understanding and the record as a whole does not show the appellees were relieved of the burden to prove affirmatively all facts necessary to entitle them to the writ. No point of error challenges the sufficiency of the evidence. Harm is not shown.

■ Underlying the argument on restriction of time is knowledge that appellant would have been allowed substantially more time for preparation of his defense if service had been by conventional citation rather than a show cause order. The argument assumes that the time allowed for answer when service is by citation is the standard that should be observed. Examination of the record discloses a very expeditious trial. However, on application appellant was granted a continuance from November 17, to November 26, 1969, and at the latter date proceeded to trial without requesting further postponement. If the time element were hindering the presentation of an adequate defense, objection to continuation of the trial and a request for delay should have been made. Though it has been characterized as an informal mode of service, a show cause order is sufficient, particularly in this instance, as the appellant appeared and answered. Texas Mexican R. Co. v. Locke, 63 Tex. 623 (1885); 37 Tex.Jur.2d, Mandamus, § 82.

All of the appellant's points are respectfully overruled. The trial court judgment is affirmed.

DAVIS, Justice (dissenting).

I dissent. This is a special election contest. The appellees seek by the harsh remedy of Mandamus to compel Judge Tom N. Cope, County Judge of Cass County, Texas, in his official capacity, to certify the results of an election to incorporate the City of Domino, Cass County, Texas.

The election which appellees seek to enforce was held on November 1, 1969. Appellant had 20 days, by statute, to declare the result of the election. Appellees filed their original petition for Mandamus on Nov. 10, 1969 before the 20 days had expired and before appellant had signed any order whatever.

The case was tried on Nov. 26, 1969, before the court, without the interventions of a jury, despite the appellant's request therefor. Judgment was signed and entered on Dec. 1, 1969, granting the writ of Mandamus.

Appellant has perfected his appeal and brings forward 4 points of error.

The opinion was presented to me marked "Per Curiam Opinion" without any discussion with me as to the facts and the law of the case prior to that time. It is my humble knowledge that a "Per Curiam Opinion" is one given in a case in which all the judges first agree, and a fuller statement is not regarded as necessary. 21 C.J.S. Courts § 217, p. 400; 21 C.J.S. Courts § 222 b, p. 415, (per curiam opinion); 21 C.J.S. Courts § 186 c, n 75, p. 300. See, also, the cases cited in 32 Words and Phrases, "Per Curiam," p. 17.

Art. 1133 V.A.T.C.S. provides that when a *Town* or Village containing more than 200 inhabitants and less than 10,000 in-

habitants may be incorporated as a *Town* or Village in the manner prescribed in Chapter 11, Title 28, R.C.S., 1925 and all amendments thereto.

Art. 1134, reads in part, as follows:

"Art. 1134. (1034) (580) Mode of incorporation:

"If the inhabitants of such *town* or *village* desire to be so incorporated, at least twenty residents thereof, who would be qualified voters under the provisions of this chapter, shall file an application for that purpose in the office of the county judge of the county in which the *town* or *village* is situated, *stating the boundaries of the proposed town or village,* the name by which it is to be known when incorporated, *and accompany the same with a plat of the proposed town or village including therein no territory except that which is intended to be used for* strictly town purposes. * * * A new election shall not be ordered in less than one year." (Emphasis added.)

This writer takes judicial notice of the fact that on Oct. 31, 1969, there was an election held that included all the same area as the proposed City of Domino, which was duly described as a Town or Village, and the majority of the qualified voters voted against it.

The purported town of Domino, Texas, secured the services of a surveyor and surveyed out certain highways, proposed highways and county roads and certified "The boundaries of the proposed town of Domino, in the County of Cass, Texas, when incorporated shall be as follows:

Field notes describing the perimeter of a 127.4 acre tract of land situated in Cass County, Texas.

COMMENCING at the intersection of the center line of U. S. Highway No. 59 and Farm to Market No. 3129, same being at center line sta. 549–79 on U. S. Highway No. 59=0+00 on Farm to Market No. 3129;

THENCE: S. 83° 37′ E. with the center line of Farm to Market No. 3129 220 feet to THE POINT OF BEGINNING for the herein described tract.

THENCE South 00° 12′ West 2025 ft. to a point;

THENCE East 1310 ft. to a point;

THENCE North 1826 ft. to a point;

THENCE South 83° 37′ East 3242 ft. to a point

THENCE South 89° 32′ East 5200 ft. to a point;

THENCE South 33° 43′ West 230 ft. to a point;

THENCE South 17° 00′ West 355 ft. to a point;

THENCE South 7° 15′ West 145 ft. to a point;

THENCE South 24° 50′ West 510 ft. to a point;

THENCE South 1° 15′ West 215 ft. to a point;

THENCE North 65° 00′ West 180 ft. to a point;

THENCE South 25° 00′ West 190 ft. to a point;

THENCE South 65° 00′ East 180 ft. to a point;

THENCE South 25° 00′ West 265 ft. to a point;

THENCE South 67° 35′ West 250 ft. to a point;

THENCE North 64° 15′ West 250 ft. to a point;

THENCE North 150 ft. to a point;

THENCE West 180 ft. to a point;

THENCE South 180 ft. to a point;

THENCE East 185 ft. to a point;

THENCE South 64° 15′ East 245 ft. to a point;

THENCE North 67° 35′ East 275 ft. to a point;

THENCE North 25° 00′ East 480 ft. to a point;

THENCE North 1° 15′ East 225 ft. to a point;

THENCE North 24° 50′ East 505 ft. to a point;

THENCE North 7° 15′ East 145 ft. to a point;

THENCE North 17° 00′ East 350 ft. to a point;

THENCE North 34° 10′ East 225 ft. to a point;

THENCE South 89° 32′ East 1640 ft. to a point;

THENCE South 4° 45′ East 980 ft. to a point;

THENCE South 1° 05′ East 450 ft. to a point;

THENCE South 88° 55′ West 190 ft. to a point;

THENCE South 1° 05′ East 190 ft. to a point;

THENCE North 88° 55′ East 190 ft. to a point;

THENCE South 1° 05′ East 220 ft. to a point;

THENCE South 85° 10′ West 190 ft. to a point;

THENCE South 4° 50′ East 190 ft. to a point;

THENCE North 85° 10′ East 190 ft. to a point;

THENCE South 4° 50′ East 290 ft. to a point;

THENCE South 18° 45′ East 1350 ft. to a point;

THENCE South 85° 45′ West 450 ft. to a point;

THENCE North 4° 15′ West 100 ft. to a point;

THENCE South 85° 45′ West 190 ft. to a point;

THENCE South 4° 15′ East 190 ft. to a point;

THENCE North 85° 45′ East 190 ft. to a point;

THENCE North 4° 15′ West 60 ft. to a point;

THENCE North 85° 45′ East 456 ft. to a point;

THENCE South 16° 15′ East 789 ft. to a point;

THENCE South 22° 00′ East 610 ft. to a point;

THENCE South 9° 45′ East 500 ft. to a point;

THENCE South 8° 00′ West 255 ft. to a point;

THENCE South 23° 50′ West 300 ft. to a point;

THENCE North 66° 10′ West 310 ft. to a point;

THENCE South 23° 50′ West 190 ft. to a point;

THENCE South 66° 10′ East 310 ft. to a point;

THENCE South 36° 05′ West 160 ft. to a point;

THENCE North 53° 55′ West 190 ft. to a point;

THENCE South 36° 05′ West 190 ft. to a point;

THENCE South 53° 55′ East 190 ft. to a point;

THENCE South 36° 05′ West 665 ft. to a point;

THENCE South 33° 20′ West 660 ft. to a point;

THENCE North 56° 40' West 190 ft. to a point;

THENCE South 33° 20' West 190 ft. to a point;

THENCE South 56° 40' East 190 ft. to a point;

THENCE South 72° 15' West 310 ft. to a point;

THENCE South 45° 00' West 350 ft. to a point;

THENCE South 23° 55' West 810 ft. to a point;

THENCE South 20° 45' West 485 ft. to a point;

THENCE North 69° 15' West 190 ft. to a point;

THENCE South 20° 45' West 190 ft. to a point;

THENCE South 69° 15' East 190 ft. to a point;

THENCE South 28° 26' West 828 ft. to a point;

THENCE South 31° 50' West 770 ft. to a point;

THENCE South 0° 12' West 3170 ft. to a point;

THENCE North 89° 48' West 200 ft. to a point;

THENCE South 0° 12' West 470 ft. to a point;

THENCE South 89° 48' East 460 ft. to a point;

THENCE North 0° 12' East 200 ft. to a point;

THENCE North 89° 48' West 210 ft. to a point;

THENCE North 0° 12' East 1240 ft. to a point;

THENCE North 89° 15' East 460 ft. to a point;

THENCE North 0° 45' West 190 ft. to a point;

THENCE North 89° 15' East 1000 ft. to a point;

THENCE North 47° 10' East 360 ft. to a point;

THENCE North 61° 50' East 340 ft. to a point;

THENCE North 74° 00' East 255 ft. to a point;

THENCE North 730 ft. to a point;

THENCE East 1475 ft. to a point;

THENCE South 220 ft. to a point;

THENCE East 210 ft. to a point;

THENCE North 220 ft. to a point;

THENCE East 90 ft. to a point;

THENCE North 58° 00' East 450 ft. to a point;

THENCE South 14° 30' East 300 ft. to a point;

THENCE South 75° 30' West 100 ft. to a point;

THENCE South 14° 30' East 170 ft. to a point;

THENCE North 75° 30' East 200 ft. to a point;

THENCE North 14° 30' West 170 ft. to a point;

THENCE South 75° 30' West 70 ft. to a point;

THENCE North 14° 30' West 350 ft. to a point;

THENCE South 58° 00' West 480 ft. to a point;

THENCE West 1630 ft. to a point;

THENCE North 240 ft. to a point;

THENCE West 250 ft. to a point;

THENCE South 240 ft. to a point;

THENCE East 85 ft. to a point;

THENCE South 730 ft. to a point;

THENCE South 74° 00′ West 230 ft. to a point;

THENCE South 61° 50′ West 350 ft. to a point;

THENCE South 47° 10′ West 360 ft. to a point;

THENCE South 89° 15′ West 1440 ft. to a point;

THENCE North 0° 12′ East 930 ft. to a point;

THENCE South 89° 48′ East 200 ft. to a point;

THENCE North 0° 12′ East 200 ft. to a point;

THENCE North 89° 48′ West 200 ft. to a point;

THENCE North 0° 12′ East 830 ft. to a point;

THENCE North 24° 58′ East 160 ft. to a point;

THENCE North 31° 50′ East 420 ft. to a point;

THENCE South 58° 10′ East 180 ft. to a point;

THENCE North 31° 50′ East 170 ft. to a point;

THENCE North 58° 10′ West 180 ft. to a point;

THENCE North 28° 26′ East 850 ft. to a point;

THENCE North 20° 45′ East 670 ft. to a point;

THENCE North 23° 55′ East 800 ft. to a point;

THENCE North 45° 00′ East 330 ft. to a point;

THENCE North 72° 20′ East 325 ft. to a point;

THENCE South 56° 40′ East 180 ft. to a point;

THENCE North 33° 20′ East 180 ft. to a point;

THENCE North 56° 40′ West 180 ft. to a point;

THENCE North 33° 20′ East 670 ft. to a point;

THENCE North 36° 05′ East 80 ft. to a point;

THENCE South 53° 55′ East 190 ft. to a point;

THENCE North 36° 05′ East 190 ft. to a point;

THENCE North 53° 55′ West 190 ft. to a point;

THENCE North 36° 05′ East 200 ft. to a point;

THENCE South 53° 55′ East 190 ft. to a point;

THENCE North 36° 05′ East 190 ft. to a point;

THENCE North 53° 55′ West 190 ft. to a point;

THENCE North 36° 05′ East 130 ft. to a point;

THENCE South 53° 55′ East 190 ft. to a point;

THENCE North 36° 05′ East 225 ft. to a point;

THENCE North 23° 50′ East 130 ft. to a point;

THENCE North 66° 10′ West 190 ft. to a point;

THENCE North 24° 05′ East 391 ft. to a point;

THENCE South 82° 0′ East 190 ft. to a point;

THENCE North 8° 0′ East 190 ft. to a point;

THENCE North 82° 0′ West 190 ft. to a point;

THENCE North 8° 0′ East 85 ft. to a point;

THENCE North 9° 45′ West 520 ft. to a point;

THENCE North 22° 00′ West 610 ft. to a point;

THENCE North 16° 00′ West 760 ft. to a point;

THENCE North 88° 00′ East 90 ft. to a point;

THENCE South 2° 00′ East 190 ft. to a point;

THENCE North 88° 00′ East 190 ft. to a point;

THENCE North 2° 00′ West 190 ft. to a point;

THENCE North 88° 00′ East 440 ft. to a point;

THENCE South 88° 00′ East 410 ft. to a point;

THENCE South 2° 00′ West 190 ft. to a point;

THENCE South 88° 00′ East 190 ft. to a point;

THENCE North 2° 00′ East 190 ft. to a point;

THENCE South 88° 00′ East 670 ft. to a point;

THENCE North 52° 00′ East 100 ft. to a point;

THENCE South 74° 40′ East 190 ft. to a point;

THENCE North 15° 20′ East 190 ft. to a point;

THENCE North 74° 40′ West 190 ft. to a point;

THENCE North 24° 10′ East 195 ft. to a point;

THENCE North 48° 45′ East 190 ft. to a point;

THENCE North 41° 15′ West 200 ft. to a point;

THENCE South 48° 45′ West 190 ft. to a point;

THENCE South 41° 15′ East 170 ft. to a point;

THENCE South 24° 10′ West 200 ft. to a point;

THENCE South 15° 20′ West 190 ft. to a point;

THENCE South 52° 00′ West 70 ft. to a point;

THENCE North 88° 00′ West 430 ft. to a point;

THENCE North 2° 00′ East 250 ft. to a point;

THENCE North 88° 00′ West 190 ft. to a point;

THENCE South 2° 00′ West 250 ft. to a point;

THENCE North 88° 00′ West 650 ft. to a point;

THENCE South 87° 34′ West 726 ft. to a point;

THENCE North 18° 45′ West 440 ft. to a point;

THENCE North 71° 15′ East 190 ft. to a point;

THENCE North 18° 45′ West 190 ft. to a point;

THENCE South 71° 15′ West 190 ft. to a point;

THENCE West 18° 45′ West 730 ft. to a point;

THENCE North 4° 50′ West 470 ft. to a point;

THENCE North 1° 05′ West 840 ft. to a point;

THENCE North 5° 21′ West 1009 ft. to a point;

THENCE North 520 ft. to a point;

THENCE East 210 ft. to a point;

THENCE North 190 ft. to a point;

THENCE West 210 ft. to a point;

THENCE North 17° 15′ East 170 ft. to a point;

THENCE North 45° 00′ East 480 ft. to a point;

THENCE South 86° 15′ East 150 ft. to a point;

THENCE South 58° 50′ East 135 ft. to a point;

THENCE South 79° 30′ East 205 ft. to a point;

THENCE North 76° 20′ East 480 ft. to a point;

THENCE South 110 ft. to a point;

THENCE East 210 ft. to a point;

THENCE North 190 ft. to a point;

THENCE West 210 ft. to a point;

THENCE South 50 ft. to a point;

THENCE South 76° 20′ West 470 ft. to a point;

THENCE North 79° 30′ West 200 ft. to a point;

THENCE North 58° 50′ West 150 ft. to a point;

THENCE North 86° 15′ West 135 ft. to a point;

THENCE North 45° 0′ East 80 ft. to a point;

THENCE East 190 ft. to a point;

THENCE North 190 ft. to a point;

THENCE West 190 ft. to a point;

THENCE North 16° 25′ West 140 ft. to a point;

THENCE North 64° 35′ East 180 ft to a point;

THENCE North 45° 40′ East 70 ft. to a point;

THENCE North 210 ft. to a point;

THENCE West 210 ft. to a point;

THENCE South 190 ft. to a point;

THENCE East 180 ft. to a point;

THENCE South 45° 40′ West 50 ft. to a point;

THENCE South 64° 35′ West 220 ft. to a point;

THENCE South 16° 25′ East 200 ft. to a point;

THENCE West 270 ft. to a point;

THENCE South 200 ft. to a point;

THENCE East 200 ft. to a point;

THENCE South 44° 16′ West 504 ft. to a point;

THENCE South 14° 14′ West 150 ft. to a point;

THENCE South 730 ft. to a point;

THENCE North 89° 32′ West 1620 ft. to a point;

THENCE North 35° 20′ East 690 ft. to a point;

THENCE North 25° 20′ East 180 ft. to a point;

THENCE North 08° 00′ East 140 ft. to a point;

THENCE North 00° 50′ East 375 ft. to a point;

THENCE North 4° 45′ West 810 ft. to a point;

THENCE South 88° 40′ East 965 ft. to a point;

THENCE North 1° 20′ East 210 ft. to a point;

THENCE North 88° 40′ West 180 ft. to a point;

THENCE South 1° 20′ West 180 ft. to a point;

THENCE North 88° 40′ West 460 ft. to a point;

THENCE North 1° 20′ East 180 ft. to a point;

THENCE North 88° 40′ West 190 ft. to a point;

THENCE South 1° 20′ West 180 ft. to a point;

THENCE North 88° 40′ West 140 ft. to a point;

THENCE North 20° 20′ West 150 ft. to a point;

THENCE North 88° 15′ West 270 ft. to a point;

THENCE North 1° 45′ East 210 ft. to a point;

THENCE North 88° 15′ West 190 ft. to a point;

THENCE South 1° 45′ West 210 ft. to a point;

THENCE North 88° 15′ West 370 ft. to a point;

THENCE North 1° 45′ East 180 ft. to a point;

THENCE North 88° 15′ West 180 ft. to a point;

THENCE South 1° 45′ West 210 ft. to a point;

THENCE South 88° 15′ East 1000 ft. to a point;

THENCE South 20° 20′ East 120 ft. to a point;

THENCE South 4° 45′ East 850 ft. to a point;

THENCE South 0° 50′ West 365 ft. to a point;

THENCE South 8° 00′ West 125 ft. to a point;

THENCE North 64° 40′ West 175 ft. to a point;

THENCE South 25° 20′ West 190 ft. to a point;

THENCE South 64° 40′ East 175 ft. to a point;

THENCE South 35° 30′ West 697 ft. to a point;

THENCE North 89° 32′ West 5244.4 ft. to a point;

THENCE North 83° 37′ West 4544.4 ft. to a point, same being the POINT OF BEGINNING and containing 127.4 acres of land, more or less.

### CERTIFICATE

This is to certify that the foregoing perimeter description of the Town of Domino, Texas, was prepared in my office, under my supervision, and is true and correct to the best of my knowledge and belief

MURRAY ENGINEERING
COMPANY
P. O. BOX 3786, TEXARKANA, TEXAS

/s/ Herbert L. Murray
Herbert L. Murray, P. E.
Reg. Engineer—Texas 20610"

There were some signatures after the "Field Notes". Then a plat of the proposed town of Domino, Texas, was attached and shows the size and shape of the proposed town or village. It is published here and made a part hereof.

NOTE
FOR DESCRIPTION SEE FIELD NOTES
PER ATTACHED SCHEDULE
POINT OF BEG
PROPOSED F M ROAD NO 3129
U S HWY. 59
SCALE ¼"=1,000'

PLAT OF TOWN OF DOMINO
CASS COUNTY TEXAS
OCT. 9, 1969
MURRAY ENGINEERING COMPANY
P. O BOX 3786 TEXARKANA, TEXAS·

F. M. ROAD NO 2327

[A3211]

I presume the record shows that the surveyors, as they followed the highways and roads would inquire if the inhabitants on the highway and roads would vote "for" or "against" the incorporation. If the voter indicated that they would vote "against" the incorporation, they were surveyed outside the proposed town of Domino. One man received two write-in votes for commissioner and the votes were refused to be counted because this man had been surveyed outside the proposed town of Domino.

Do the boundaries as surveyed for the proposed town of Domino actually compose a "town" or "village"? A "town" is described in Webster's Dictionary as:

"A collection of houses, larger than a village; in a general sense, a city or borough; often used in opposition to *Country*, in which case it is preceded by the definite article.

"The term is often used absolutely, and without the proper name of the particular place, to denote the metropolis, county, town, or a particular city, in which, or in the vicinity of which the speaker or writer is; as, to live in *town*; to go to *town*; to be in *town*. In this usage in England, London is the town particularly referred to in most cases".

A "village" is described as:

"A small assemblage of houses, less than a town or city, and larger than a hamlet; also, collectively, the villagers; as the *village* rose to a man".

A City is described as:

"1. In a general sense, a large town; a large number of houses and inhabitants, established in one place.

2. Specifically, a corporate town; a town or collective body of inhabitants, incorporated and governed by particular officers, as a mayor and aldermen. This is the sense of the word in the United States. In Great Britain, a borough or *town* corporate, which is or has been the seat of a bishop, or the capital of his see, is called a *city*.

3. The collective body of citizens, or the inhabitants of a city; as, the *city* voted to establish a market." (Emphasis added).

A careful examination of the plat of the proposed town of Domino will reveal that there is only one place large enough to build but one building, and that is on U. S. Highway No. 59. I will not speculate what kind of business building will be built there; or, if there will be any other election if the town of Domino is incorporated.

The description of the proposed town of Domino does not describe a "town", "village" or "City". If the incorporation is permitted to stand, the name should be changed to "Stringtown".

The appellees admitted themselves out of Court when they offered in evidence as their "Exhibit No. 1", "Appellant's First Amended Answer". Omitting the number and style of the case, it reads as follows:

"DEFENDANT'S FIRST AMEND-
ED ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

"Now comes Tom N. Cope, Defendant herein and files this his First Amended Answer to the Plaintiff's Petition for Mandamus and would show unto the Court that the Plaintiff's Petition for Mandamus should be denied and that no writ of Mandamus should issue for the following reasons:

1.

"The Petition was filed at a time when the Defendant was under no legal obligation and had no legal duty to grant the Plaintiffs the relief sought by Mandamus.

2.

"The Plaintiffs have another plain, effective and adequate remedy to obtain the relief sought.

3.

"The act performed by the Defendant was an act involving judicial discretion.

4.

"The Defendant denies each and every, all and singular the material allegations contained in the Plaintiffs' Petition and demands strict proof thereof; and Defendant further demands that all issues of fact be tried before a jury in the manner prescribed by law.

"WHEREFORE, the Defendant prays that the above entitled and numbered cause be placed upon the jury docket of this Honorable Court and that upon final hearing, the Plaintiffs' Petition for Mandamus be in all things denied; that the Plaintiffs have nothing by their suit; that the Defendant have his cost of suit and such other and further relief at law or in equity to which he may show himself justly entitled.

Respectfully submitted

/s/ Neal Birmingham

Neal Birmingham

"I, Neal Birmingham, have read the above and foregoing page of typewritten material and state on my oath that each

and every statement therein contained is true and correct.

/s/ Neal Birmingham
Neal Birmingham

"STATE OF TEXAS }
COUNTY OF CASS }

"SWORN TO AND SUBSCRIBED before me, by Neal Birmingham on this the 21st day of November, 1969. To certify which witness my hand and seal of office.

/s/ Ruby Dowd
Notary Public in and for
Cass County, Texas"

(SEAL)

When appellees offered that into evidence for all purposes, they became bound by every fact alleged therein. Lock v. Morris (Tex.Civ.App.1956) 287 S.W.2d 500, w. r., n. r. e.

Appellees admitted that the burden was upon them to prove their case. They put on only two witnesses. Calvin W. Wesch and Howard W. Willingham. Neither of these witnesses testified to any facts that would prove that the town of Domino, Texas, had been duly incorporated. They did not offer into evidence the petition of the appellees, nor the order of appellant calling the election. They did not offer into evidence the fact that the notices were posted as required by the statutes and the returns were made thereon. They did not actually offer into evidence the number of the votes cast, nor the description or plat of the proposed town of Domino, Texas. I believe all this proof is essentially necessary to prove the incorporation of the town of Domino, Texas, on a petition filed more than 20 days after the election before the District Judge would have jurisdiction to grant a writ of mandamus.

I think the description of the proposed Town of Domino presents a fundamental error. It is our duty to search for fundamental error when the point is not raised or briefed. 4 T.J.2d 127, Sec. 612; Risinger v. First State Bank (Tex.Civ.App.1928) 12 S.W.2d 242, n. w. h.; Brown v. Spector (Tex.Civ.App.1934) 70 S.W.2d 478, n. w. h.; Judd v. Wyche (Tex.Civ.App.1935) 80 S.W. 2d 808, n. w. h.; Cook v. Nacogdoches County (Tex.Civ.App.1941) 147 S.W.2d 943, er. dis. jud. cor. The description of the proposed town of Domino does not describe a "town". It merely makes a survey of the highways and roads. The taxpayers of Domino could be put to an enormous and outrageous expense in keeping up the highways, building more highways and public roads, because that automatically becomes their duty. Certain interested persons could take legal action against the Texas Highway Department and the Commissioners Court of Cass County to prevent them from spending any State and County tax money to build and maintain the highways and public roads within the described City of Domino, Texas.

Although appellant did not raise the fundamental point of error in his original brief, nor raise a point of error that an election had been held in the same area within one year, but he can do so in a supplemental brief, or in his motion for rehearing. Perkins v. Ingalsbe, 1961, 162 Tex. 456, 347 S.W.2d 926. On fundamental error, see, also, 4 T.J.2d 166, Sec. 658, and cases cited under Note 14, p. 168; 4 T.J.2d 430, Sec. 869 and cases cited under note 19.

By points one and two, appellant says the trial court erred in concluding, as a matter of law, that the appellees had no other plain, effective and adequate remedy to obtain the relief sought; and, in not dismissing the appellees petition because of the existence of another plain, effective and adequate remedy, other than by Mandamus. Let me express again that this election to incorporate a town is a "Special Election" as provided by the statutes. This being a "Special Election", the cases cited in the opinion of this court are not applicable. In each case cited, only the County Judge took any action and the commissioners were not brought into the picture, as in the case at

bar. In the case of Perkins v. Ingalsbe, 1961, 162 Tex. 456, 347 S.W.2d 926, the County Judge called an election and attempted to set it aside.

There is a conflict between Arts. 1.02 and 8.29a of the Election Code and Art. 1139, Title 28, Cities, Town and Villages.

Art. 1.02, Elec.Code, reads as follows:

"ART. 1.02 County Judge failing to act

"Whenever, by this title, any duty is devolved upon a county judge, and that office is vacant, *or such officer from any cause fails to perform such duty*, any two (2) or more of the county commissioners of the county may and *shall* perform such duty." (Emp. added).

Art. 8.29a, Elec.Code, reads, in part, as follows:

"Art. 8.29a    Returns of other elections

"*When some other statute regulating the conduct of a specific type of election* provides the procedure for making returns of the election, for canvass of the returns, or for custody and disposition of the voted ballots, those provisions shall govern such matters in the conduct of the election. *In the absence of such other law, the provisions of this Code applicable to elections held by the county, as modified by this section, shall govern such matters for all elections held by cities, school districts, and other political subdivisions* of this state, insofar as these provisions can be made applicable, *and references in this Code to the county judge, commissioners court*, and the county clerk shall be deemed to mean the appropriate officer or board, as herein provided, for the type of election involved. * * *" (Emphasis added)

Art. 1139, Returns, reads as follows:

"Art. 1139 (1040–41) Returns

"If a majority of the votes are cast in favor of incorporation the officers holding the election shall make return thereof to the county judge within ten days after the same was held. The county judge shall, within twenty days after the receipt thereof make an entry upon the records of the commissioners court that the inhabitants of the town or village are incorporated within the boundaries thereof; which boundaries shall also be designated in the entry. A certified copy of such entry, together with the plat of the town or village, shall thereupon be recorded in the proper record of deeds of such county."

There is a History, Status, and Function of Cities, Town and Villages that actually precedes "Title 28, Cities, Towns and Villages" by Hon. Trueman O'Quinn, Attorney at Law, Austin, Texas, that every citizen of Texas should read. It begins under the Spanish and Mexican rule and makes a very scientific History of the Status and Functions of Incorporated Cities from 1836 down to date. Any person with an open mind, after reading this article, would realize that all the highways and country roads could be incorporated for unreasonable and illegal purposes; provided, those living in the incorporated city were not bound to pay the necessary taxes to build, maintain and keep them in first class condition.

I do not believe that Arts. 1155 and 1187, V.A.S., has anything to do with the incorporation of the proposed town of Domino, Texas. Neither do I believe that the Texas Constitution and the Texas Legislature intended to make any provisions for the incorporations of any cities, towns or villages just along the highways and public roads, as was done in this case. The very purpose of a writ of Mandamus is to supply defects in justice. It does not supersede legal remedies. Nelson v. Pickett (Tex.Civ.App.1960), 332 S.W.2d 129, Mand. overruled; 78 A.L.R.2d 1215. The writ of Mandamus is an extraordinary process, the offspring of necessity, arising from a failure of the law to furnish a remedy commensurate with the exigencies of the case. It must be the last resort of the relator.

37 T.J.2d 599, Sec. 12, and the many cases cited thereunder. I would affirm points one and two.

By his third point, appellant says the trial court erred in denying him a right to a trial by a jury. Since it is the well known law of Texas that State, or either of its subsidiaries; a county, or any of its officers in an official capacity; a city, town, village or school district are required to post costs or give appeal bonds, surely Judge Tom N. Cope, in his official capacity as county judge would not, in a case like this, be required to give ten days notice and pay a jury fee to get the case tried before a jury. The law is so well settled there is no need to cite authorities. Electra Independent School District v. W. T. Waggoner Estate (Tex.Civ.App.1943), 168 S.W. 2d 645, n. w. h.

Appellees approached Judge Cope on Monday, November 3, 1969, (the second day after the proposed election was held) and demanded that he enter an order declaring the town of Domino, Cass County, Texas, duly and legally incorporated. Appellant refused to enter the order and told them that he would call the commissioners into a special meeting on Friday, Nov. 7, 1969. Appellees prevailed upon him to call it earlier. Appellant then called the commissioners for a special meeting for Thursday, Nov. 6, 1969. All four commissioners were present. Some of the appellees were there, as well as Howard W. Willingham. Appellant still refused to sign the order. But no one inquired of either of the commissioners as to whether or not two or more of them would sign the order. Without waiting the full 20 days, appellees filed this suit on Nov. 10, 1969. The trial judge set the case for hearing on Nov. 17, 1969. Under the direction of the District Judge, appellant filed a form of an answer on or before the 17th day of November, 1969, and on that day the case was continued until Nov. 26, 1969. There were certain questions of fact to be found and appellant was entitled to a trial before a jury. The questions of fact are: Could the appellees incorporate the highways and public roads into an incorporated town? Could the appellees file their suit prior to 20 days after the election return was presented to appellant? Was appellant entitled to Monday after the expiration 20 days after service of notice in which to file his answer? I think the trial court clearly abused his discretion in forcing appellant to trial and in denying him a jury. 35 T.J.2d 66, Sec. 30, and the cases cited thereunder. I would sustain point three.

## COMMENT

The appellant filed a Supersedeas Bond in the amount of $500.00 plus an appeal bond. The appellees filed a motion to require him to file an amended Supersedeas Bond in the amount of $69,000.00. The motion was overruled. Appellees alleged that it was necessary to file a Supersedeas Bond in an amount large enough so they could recover any damages that might be caused them in the event the Town of Domino, Texas, was incorporated and they could not borrow the money to install water lines and gas lines in the City of Domino. Such allegations are untrue. There are millions of people in Texas, who live outside the city limits of any city, town or village that have running (pure) water in their houses, natural gas piped into the same, electricity to light their homes and to use as they see fit, and telephone service. The incorporation of the highways and public roads into the "Town of Domino, Cass County, Texas" is wholly unnecessary.

The trial court clearly committed an error in prematurely ordering the appellant to show cause why a writ of mandamus should not be issued against him. The case was prematurely filed, the case was not proved and the appellees could have requested at least 3 of the commissioners to sign the order. I would sustain point 4.

I would reverse and dismiss the lawsuit.